**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| TERELL WASHINGTON, | ) CASE NO. 1:19-cv-01066 |
| Petitioner, | ) JUDGE CHRISTOPHER A. BOYKO |
| v. | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| BUREAU OF PRISONS, | ) |
| Respondent. | ) **REPORT AND RECOMMENDATION** |

Petitioner, Terell Washington, (hereinafter "Petitioner" or "Washington"), a federal prisoner, filed a habeas petition pursuant to 28 U.S.C. § 2241 challenging the execution of his sentence. (R. 1). Specifically, Petitioner seeks to have his good-conduct credit recalculated pursuant to the First Step Act of 2018, Pub. L. 115-391. *Id*. On May 15, 2019, the Federal Public Defender filed a Supplement to Petition for Writ of Habeas Corpus and Memorandum in Support of Motion for Good-Time Credit Under 28 U.S.C. 2241.[1] (R. 2). On May 21, 2019, this matter was referred to the undersigned for preparation of a report and recommendation. On June 10, 2019, Respondent Bureau of Prisons (hereinafter "Respondent" or "BOP") filed its opposition to

---

[1] Petitioner filed the petition *pro se*. (R. 1). Subsequently, the court appointed the Federal Public Defender to represent Washington on May 23, 2019.

the petition and motion to dismiss. (R. 6). Petitioner had fourteen days pursuant to the court's Initial Order to file a response, but has not done so nor has he requested an extension of time to do so. (R. 4). Therefore, this matter is ripe for review. It is recommended that the motion to dismiss (R. 6) be GRANTED and that the habeas petition be DISMISSED without prejudice for the reasons stated below.

## I. Analysis

Petitioner and Respondent agree that Petitioner was sentenced to a 262-month term of imprisonment, which was later reduced to 188 months. (R. 2, PageID# 13; R. 9, PageID# 27). Both agree Petitioner is presently scheduled to be released on December 20, 2019. *Id*.[2] A recent decision of this district addressing a similar claim has succinctly identified the issue before this court as follows:

> The Bureau of Prisons ("BOP") must release a federal prisoner on the date of the expiration of the prisoner's term of imprisonment, less any time credited towards his sentence. *See* 18 U.S.C. § 3624(a). Title 18 U.S.C. § 3624(b) provides a credit toward service of sentence for satisfactory behavior ("good time credit"). The BOP originally interpreted 18 U.S.C. § 3624(b) to allow a 47-day reduction in a prisoner's sentence for each year served. The First Step Act amended § 3624(b) to afford prisoners a 54-day per year served reduction. *See* Pub.L. 115-391, Title I, § 102(b)(1)(A), (2), Dec. 21, 2018, 132 Stat. 5210, 5213. [Petitioner] argues that the Court should recalculate his good time credits and order him to be released on June 6, 2019 instead of July 25, 2019. However, the First Step Act's amendment to the good time credit provision does not become effective until "the date that the Attorney General completes and releases the risk and needs assessment system[.]" *Id*. The Attorney General has until July 19, 2019 to develop and publicly release the risk and needs assessment system. *See* 18 U.S.C. § 3632(a) ("Not later than 210 days after the date of enactment of this subchapter, the Attorney General . . . shall develop and release publicly . . . a risk and needs assessment system[.]").

*Cole v. Williams*, No. 4:19cv472, 2019 U.S. Dist. LEXIS 93280, *2-3 (N.D. Ohio Jun. 6, 2019)

---

[2] Although Petitioner asks that his good time credit be recalculated, he does not specify how many additional days he believes he is entitled to under the First Step Act.

(Polster, J.)

Petitioner asserts that he should be granted relief without exhausting his administrative remedies, and argues that it would be futile to require him to do so because the BOP has predetermined the issue. (R. 2, PageID# 21-22). In addition, Petitioner asserts that despite the explicit presence of the delayed-effective-date provision in the statute, the good-conduct calculation fix should be construed as immediately effective, because the delayed-effective-date provision is connected only to the risk and needs assessment system. (R. 2, PageID# 16-19). Finally, Petitioner suggests that "[d]elaying the effective date of the good-time fix would be arbitrary and capricious and violate the Due Process and Equal Protection Clauses of the Constitution." (R. 2, PageID# 19-21).

Like Washington, numerous inmates across the country have petitioned district courts to apply the good-time recalculation provisions of the First Step Act immediately; "[c]ourts have variously denied their petitions for nonjusticiability . . . because the change in law has not yet taken effect." *Matthews v. Williams*, No. 4:19cv518, 2019 WL 1639776, at *1 (N.D. Ohio, Apr. 16, 2019) (Pearson, J.); *see also Cole*, No. 4:19cv473, 2019 U.S. Dist. LEXIS 93280; *United States v. Lorenz*, No. 5:17cr493, 2019 WL 2082280 (N.D. Ohio May 13, 2019) (Gwin, J.); *United States v. Scouten*, No. 13cr20S, 2019 WL 1596881 (W.D.N.Y. Apr. 15, 2019); *Brown v. Warden of FCI Williamsburg*, No. 8:19cv00546, 2019 WL 1780747 (D.S.C. Mar. 25, 2019); *Rizzolo v. Puentes*, No. 1:19cv00290, 2019 WL 1229772 (E.D. Cal. Mar. 15, 2019).

**A.  Effective Date of First Step Act**

Petitioner's argument that good-time credit change should be construed as immediately effective has been roundly rejected by the courts, including numerous decisions within this district. *See, e.g., Lorenz*, 2019 WL 2082280 at *1 (finding the provisions of the Act do not go

3

into effect until July 19, 2019, and that the petitioner's "interpretative arguments to the contrary would require the Court to rewrite the law"); *Cole*, 2019 U.S. Dist. LEXIS 93280 at *3 (agreeing with petitioner "that the risk and needs assessment system is being developed to calculate earned time credits, not good time credits," but that "Congress was explicit that the delayed effective date applies to *all* amendments made to § 3624, including the amendment to good time credits") (emphasis in original); *Matthews*, 2019 WL 1639776, at *1-2 (finding the amended provisions of the First Step Act had not yet taken affect because the AG had yet to complete the risk and needs assessment); *Brown v. Warden*, 2019 U.S. Dist. LEXIS 69440, *14 (D.S.C. Mar. 25, 2019 ("Because the Attorney General has not yet completed the assessment, the amendments to § 3624(b) have not taken effect.") (collecting cases reaching same conclusion).

Because the Attorney General has not released the risk and needs assessment system yet, the new good-credit calculation provisions are not in effect, and Washington's petition is premature.

**B. Exhaustion**

Before filing a habeas petition under 28 U.S.C. § 2241, federal inmates must exhaust their administrative remedies. *Fazzini v. Northeast Ohio Corr. Ctr.*, 473 F.3d 229, 231 (6th Cir. 2006). The failure to exhaust administrative remedies may be excused if seeking administrative remedies would be futile. *Id.* at 236. Washington argues that because the BOP has announced that the new calculation for good-time credit is not effective immediately, this would render the exhaustion requirement futile. Petitioner conflates futility with untimeliness. *Lorenz*, 2019 WL 2082280, at *2 ("Although futility can excuse administrative remedies, Lorenz mistakes untimeliness for futility. Lorenz does not argue the at Bureau of Prisons would deny his credit after it vests."); *Shah v. Hartman*, No. 18cv7990, 2019 U.S. Dist. LEXIS 71234 *10 (N.D. Ill.

4

Jan. 30, 2019) (declining to waive exhaustion requirement for First Step Act good-time credit claim and finding that "federal courts apply the exhaustion requirement to § 2241 as a common law rule").

Washington's presumption that the BOP's implementation of the First Step Act will not adequately protect his statutory right to good-time credits are entirely conclusory, and are insufficient to bypass the exhaustion requirement. Washington alleges that he "faces imminent irreparable harm in the form of over-service of his sentence, given that his correct release date will pass during the time he spends futilely seeking administrative relief." (R. 2, PageID# 22). He further suggests that he would have already been released to a halfway house if his sentence was recalculated. *Id*. at PageID# 13. This latter argument is addressed in the section below. Washington's assertion that requiring him to exhaust his administrative remedies would result in over-service is also conclusory. *See Matthews*, 2019 WL 1639776, at \*2; *Schmutzler v. Quintana*, No. 5:19cv046, 2019 WL 727794, at \*2 (E.D. Ky. Feb. 20, 2019). There is no evidence to suggest that if Washington pursued his administrative remedies after the Attorney General releases the risk and needs assessment system, that the BOP would not recalculate his good-time credits as required by the First Step Act and adjust his release date. "Further, the irreparable harm exception is designed to cover instances where delays caused by the administrative process are the source of the harm. Here, by contrast, the alleged harm results from Congress' choice to delay implementation." *Lorenz*, 2019 WL 2082280, at \*2 (internal citations omitted).

Given the foregoing, the court agrees with the sound reasoning of other district courts that Petitioner must first exhaust his administrative remedies before bringing a § 2241 petition, and that the provisions of the First Step Act do not alter this requirement or render the requirement

5

futile.

C. **Halfway House Placement**

Petitioner's assertion that he would be in a halfway house by now if his good-time credits were properly calculated under the new provisions of the First Step Act, even if true, fails to set forth an entitlement to habeas relief. As explained by *Rizzolo*, *supra*:

> The Act does not mandate BOP place prisoners in a halfway house for six months or any other period. Under the current version of 18 U.S.C. § 3624(c), as amended by the Second Chance Act of 2007, the BOP is authorized to consider placing an inmate in a community correctional facility for up to twelve months. However, a prisoner is neither entitled to, nor guaranteed such placement for any minimum amount of time. 18 U.S.C. § 3624(c). *See Berry v. Sanders*, 2009 WL 789890, at *6-*7 (C.D. Cal. March 20, 2009); *Guss v. Sanders*, 2009 WL 5196153, at *4 (C.D. Cal. Dec. 29, 2009). The determination of whether an inmate is eligible is in the discretion of BOP. *Reeb v. Thomas*, 636 F.3d 1224 (9th Cir. 2011) (Individualized determinations whether an inmate is eligible for residential drug treatment program pursuant to 18 U.S.C. § 3621 is within the discretion of BOP); *Mohsen v. Graber*, 583 Fed. Appx. 841, 842 (9th Cir. 2014) (Applying *Reeb* in the context of individualized determination of eligibility for residential reentry center under § 3621). The First Step Act does not alter this rule.
>
> Further, the Court is precluded from reviewing BOP's placement decisions. *See Reeb*, 636 F.3d at 1227. Therefore, any challenge to BOP's discretionary decisions as to eligibility for placement in a halfway house are not reviewable by this court.

*Rizzolo*, 2019 WL 1229772 at *3 (E.D. Cal. Mar. 15, 2019); *see also Schmutzler v. Quintana,* 2019 U.S. Dist. LEXIS 26433, *4-5 (E.D. Ky. Feb. 20, 2019) (indicating "the First Step Act does not mandate that the BOP place prisoners in a halfway house for six months or any other period.") "Under the current version of 18 U.S.C. § 3624(c), as amended by the Second Chance Act of 2007, the BOP is authorized to consider placing an inmate in a community correctional facility for up to twelve months. However, a prisoner is neither entitled nor guaranteed such placement for any minimum amount of time." *Schmutzler,* 2019 U.S. Dist. LEXIS 26433 at *4-5; *see also Kornfeld v. Puentes*, 2019 U.S. Dist. LEXIS 33298, *7-8 (E.D. cal. Feb. 29, 2019)

6

(same).

Thus, Petitioner's half-way house argument simply fails to state a basis for habeas corpus relief.

## D. Due Process and Equal Protection

Finally, Petitioner asserts that "[d]elaying the effective date of the good-time fix would be arbitrary and capricious and violate the Due Process and Equal Protection Clauses of the Constitution." (R. 2, PageID# 19-20). This argument has also been rejected by other courts that have considered the issue.

> But "equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices," *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993), and in the absence of any claim "that the statutory distinction ... burdens a suspect group or a fundamental interest," a court should "not overturn [] a statute unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [it] can only conclude that the legislature's actions were irrational," *Vance v. Bradley*, 440 U.S. 93, 96-97, 99 S. Ct. 939, 59 L. Ed. 2d 171 (1979). A "[p]art[y] challenging legislation under the Equal Protection Clause cannot prevail so long as 'it is evident from all the considerations presented to [the legislature], and those of which we may take judicial notice, that the question is at least debatable.'" *Western and Southern Life Ins. Co. v. State Bd. of Equalization of Calif.*, 451 U.S. 648, 674, 101 S. Ct. 2070, 68 L. Ed. 2d 514 (1981) (*quoting United States v. Carolene Prods. Co.*, 304 U.S. 144, 154, 58 S. Ct. 778, 82 L. Ed. 1234 (1938)).) "[T]hose attacking the rationality of the legislative classification have the burden to negate every conceivable basis which might support it." *Beach Communications, Inc.*, 508 U.S. at 315 (internal quotation omitted).

*United States v. Daniels*, 2019 U.S. Dist. LEXIS 93630, *10-11 (D. Conn. Jun. 4, 2019); *see also Cox v. White*, 2019 U.S. Dist. LEXIS 94689, *4 (M.D. Pa. Jun. 6, 2019) (finding that "Cox's argument that delayed implementation of [the First Step Act] violates due process and equal protection lacks merit," because "'[t]he law is clear that inmates are not a suspect class. As to the question of fundamental rights, the good time credit statute merely authorizes the BOP to offer

7

prisoners the benefit of a reduced sentence in exchange for good behavior. *See* 18 U.S.C. § 3624(b). It therefore does not implicate any fundamental right implicitly or explicitly guaranteed by the Constitution. The BOP's policy of calculating good time credits is therefore subject only to rational basis review.'") (*citing Perez v. Zenk*, No. 04cv5069, 2005 U.S. Dist. LEXIS 44014, 2005 WL 990696, at *4 (E.D.N.Y. Apr. 11, 2005)). Finally, as explained in another decision from this district, "to state an equal protection claim, [petitioner] must first show that the law treats him differently as compared to other similarly situated persons," but petitioner cannot do so because "the delay applies to everyone eligible for good time credit." *Lorenz*, 2019 WL 2082280, at *2.

Petitioner fails to persuade the court that Congress' decision—to give the Attorney General a specified period of time to develop and implement a new approach to awarding credit for good conduct and successful completion of recidivism reduction training before the statutory provisions go into effect—is wholly irrational.

## II. Conclusion

For the foregoing reasons, it is recommended that Washington's Petition be DISMISSED without prejudice as premature.

s/ David A. Ruiz  
United States Magistrate Judge

Date: July 3, 2019

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. *28 U.S.C. § 636(b)(1)*. Failure to file objections within the specified time may waive the right to appeal the district court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).